THE STATE OF TEXAS EX REL. T. N. RUSSELL v. JOE BOX.

Decided February 6, 1904.

**1.—Removal of County Officer—Prosecution by State's Attorney.**

A proceeding to remove a sheriff from office for failure to give bond, brought in the name of the State by an individual as relator, is not subject to demurrer on the ground that such a proceeding can only be conducted by the district attorney or some other officer authorized to prosecute suits in the name of the State.

**2.—Same—Failure to Give Bond Need Not Be Negligent.**

Under Revised Statutes, article 4894, providing that an office shall be deemed vacant when the person elected shall neglect, refuse or fail from any cause whatever to give bond within the required time, it is not necessary, in order for a failure to give bond to have the effect of vacating the office, that it should be a negligent failure or due to negligence.

**3.—Same—Motive Immaterial.**

Where an officer has done a lawful act in declaring another office vacant, it is wholly immaterial that he may have been actuated by a bad motive.

**4.—Same—Orders of Commissioners Court—Collateral Attack.**

A proceeding under the statute to remove a county officer for failure to give bond does not depend on the validity of an order of the commissioners court declaring the office vacant because of such failure, and is not a collateral attack on such order.

**5.—Same—Appointee Holding Over.**

Where a county officer is appointed to office by the commissioners court, and is afterwards elected to the office and fails to qualify, he is not entitled to hold over by virtue of the former appointment and qualification thereunder.

**6.—Same—Practice on Appeal—Remand of Cause.**

Under Revised Statutes, articles 3541, 3544, providing that in proceedings to remove a county officer the truth of the cause of removal shall be established by the verdict of a jury, the appellate court, in reversing a judgment rendered in such a proceeding in favor of the defendant, will remand the cause, though the uncontradicted evidence be such as to warrant a judgment of removal.

Appeal from the District Court of Lipscomb. Tried below before Hon. B. M. Baker.

*Ben H. Kelly* and *C. Coffee,* for appellant.

*H. E. Hoover,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—This proceeding for the removal of Joe Box from the office of sheriff and tax collector of Hutchinson County was commenced August 17, 1903, in the District Court of that county, as provided in articles 3541, 3542 and 3543 of Revised Statutes. The petition was signed and sworn to by T. N. Russell, as relator, and was filed in the name of the State of Texas. It was demurred to on the following ground: "Because said petition upon its face shows that the suit is not properly brought, and, if properly brought, said petition shows upon its face that it is not brought by the proper officer, or by the proper authority designated by law to institute and prosecute such action." This demurrer was overruled, and the proceeding went to trial

on the issues made by the petition and answer, resulting in a verdict and judgment in favor of Box, from which this appeal is prosecuted.

The cross-assignment of error complaining of the ruling on demurrer must be overruled. Under these cross-assignments it is insisted that a proceeding for the removal of a sheriff or other county officer can only be conducted by the district attorney or some other officer authorized to prosecute suits in the name of the State; but, if this be conceded, it does not follow that the court erred in overruling the demurrer, since it does not appear from the face of the petition, which was signed only by the relator, by whom, that is, by what attorney or attorneys, the proceeding was to be conducted. True, the replication to appellee's answer was signed by Coffee & Kelly as attorneys for relator, and the proceeding at the trial seems to have been conducted by them, but without objection from appellee. However, if the question be treated as sufficiently raised, we are not prepared to agree with appellee that only the district attorney or other public prosecutor can conduct a proceeding for the removal of a county officer. Doubtless the district judge might require the district attorney to conduct such proceedings, either with or to the exclusion of other attorneys, but this he could not do in all cases, since article 3554 of the same chapter provides specially for such proceedings against the district attorney himself. The view expressed by Judge Roberts in Trigg v. State, 49 Texas, 675, that this matter is within the discretion of the district judge before whom the proceeding is brought, we are disposed to adopt. See, also, Bland v. State, 38 S. W. Rep., 253.

The grounds relied on for the removal of appellee were: First, his failure to give the bonds and take the oath of office required of him as the elect sheriff and tax collector of Hutchinson County after due notice of his election at the General election, held in November, 1902; second, his failure to execute the new bonds required of him by the Commissioners Court of said county as sheriff and tax collector, to which office he had been appointed February 11, 1902. To sustain these grounds the following certified copies of the orders or judgments of the Commissioners Court of Hutchinson County were introduced in evidence:

"Monday, Dec. 1, 1902. The time having expired for presenting bonds for any officer elected to office at the November election, 1902, Joe Box, the sheriff elected at that time having presented no bond, and his present bond having been complained, he was ordered to file a new bond by the 20th day of December, 1902."

"January 3, 1903. On this day came before the court the matter of the sheriff and tax collector's bonds, and it appearing to the court that the time having expired in which a sheriff can make bond under the election, and the sheriff elect, Joe Box, failing to give satisfactory reasons to the court why he did not file said bonds in compliance with law, and the said sheriff's old bonds being complained of, he, the said Joe Box, failed to file said bonds under the instructions of the court, and the bonds being insufficient, the court hereby adjudge and declare the office

of the sheriff and tax collector to be vacant, and does proceed to appoint a sheriff and tax collector to fill the unexpired term thereof."

"April 20, 1903. Now coming before the court the matters of sheriff and tax collector to fill the unexpired term of Joe Box, who having failed to make bond as required by law, and E. P. Cannady's name being before the court; it is ordered by the court that E. P. Cannady be appointed sheriff and tax collector in and for Hutchinson County, and that said Cannady make his bonds as the law directs."

"May 12, 1903. Now coming on to be considered by the court the official bonds of E. P. Cannady as sheriff and tax collector of Hutchinson County, and upon inspection of said bonds, it is ordered by the court that all bonds of the said E. P. Cannady as sheriff and tax collector be approved, and the clerk ordered to file the same; which was accordingly. done. It is further ordered that the State bond for the collection of taxes be forwarded to Comptroller."

No other testimony was introduced by relator. The evidence introduced by appellee consisted alone of his own testimony and that of one other witness, and was to the effect that, after receiving his certificate of election November 11, 1902, appellee went to work at once to get up his bonds, but did not get them ready before December 20, 1902, and did not then present them to the Commissioners Court, the excuse being that no term or session of the court was then held, appellee testifying: "The county judge had me open court and then adjourn; this was about 5 or 6 o'clock in the evening." On January 3, 1903, he was personally present before the Commissioners Court with his bonds, ready to give bond and take the oath of office, but did not submit them to the court, and, so far as the record shows, has never done so, and it affirmatively appears that he has never taken the oath of office since his election, yet he still holds the office. The rest of appellee's testimony related to the circumstances relied on to show an excuse for not having the bonds ready within the time prescribed by law, or within the time as extended by the order of the Commissioners Court, which, in our view of the case, need not be set out.

The court, discarding the issue as to appellee's failure to give new bonds, instructed the jury to find whether he had given the bonds as sheriff and taken the oath of office required of him by law within twenty days after receiving his certificate of election, or within the further time extended to him by the Commissioners Court; and if not, whether he had been "prevented from doing so by some good reason beyond his control." The charge then proceeded: "Now, if you find from the evidence by a preponderance thereof, that said Box failed and neglected to present his official bonds as sheriff to the Commissioners Court of Hutchinson County within twenty days after the receipt of his certificate of election, and secure the approval of said bonds by said court and take the oath of office as sheriff, and you further find that he was not prevented from presenting said bonds and taking said oath by some good reason beyond his control, and if you further find that the said Box failed and

neglected to present to said court his official bonds and secure the approval of said court of said bonds and take the oath of office as required by law within such time as may have been extended to him, if any time was extended to him by the Commissioners Court of said county, beyond the said twenty days in which he was to be permitted to present said bonds and take said oath, and that he was not prevented from presenting said bonds and taking said oath by some good reason beyond his control, then and in such case you will find for the plaintiff, and the form of your verdict will be: 'We, the jury, find that the cause in plaintiff's petition for removal of defendant, Joe Box, to wit, that he neglected and failed to present and have approved, his official bonds as sheriff of Hutchinson County and take the oath of office as such sheriff within the time prescribed by law, is true in point of fact.' If you do not find under the foregoing paragraph that the said cause set forth in the petition is true in point of fact, you will find for the defendant."

The jury found that appellee had not, as expressed in their verdict, "neglected and failed to present and have approved his official bonds as sheriff of Hutchinson County and take the oath of office as such sheriff within the time prescribed by law." That is, they found that he had not both neglected and failed to qualify within the prescribed time, but did not distinctly find whether he had failed to qualify or not. Read in connection with the charge above quoted, to which it purported to respond the verdict seems rather ambiguous, the negative finding implying or covering up an affirmative. A denial in pleading so expressed would be termed a negative pregnant, and would be treated as an admission of the implied fact. Anderson's Law Dic., p. 702; Ex parte Wall, 107 U. S., 265. While a verdict is not to be so harshly construed, it must be free from ambiguity in disposing of the material issues before it can be made the basis of a judgment. In view of the admission in appellee's own testimony that he had never qualified after his election, it would be uncharitable to construe the verdict as finding that he had done so.

Treating the verdict, then, as ambiguous and as leaving undetermined the alleged failure of appellee to qualify, we are brought to the question, whether a sheriff who has not *neglected* to qualify within the time prescribed by law, as the jury found, may be removed from office for a *failure from some other cause* to qualify within that time or thereafter. The statute on this subject is article 4894. Appellee insists that this statute is merely directory as to the time within which a sheriff elect is required to qualify, and cites the case of Flatan v. State, 56 Texas, 93. This decision was made in the year 1882 under article 4518 of the Revised Statutes of 1879. On account, possibly, of this very decision, that article was amended in 1885 by the substitution of what is now article 4894, which, instead of declaring, as the former article had done, that the office shall be deemed vacant when the person elected "shall *neglect or refuse*" to qualify within twenty days after notice of his election, declares the office shall be deemed vacant when the person elected "shall neglect, refuse or *fail from any cause whatever,* to give bond and take the oath

of office within twenty days after notice of his election." In construing the old article the court used this language in the case cited: "The plain words of the statute should have their full effect in reference to the time within which an elected person should qualify, in all cases in which there is neglect or refusal to qualify." Now that the words, "fail from any cause whatever," have been added by amendment to "neglect or refuse," why should not the words of the amended statute in reference to the time within which an elected person should qualify be given their full effect in all cases where there has been a failure from any cause whatever to qualify? We see no escape from the conclusion which this question imports, without doing violence to the plain language of the statute. It may be that tender of performance in the matter of giving bonds, as in other matters, should be treated as the equivalent of performance, and hence that the person elected would not be said to have failed to qualify where he had been prevented from giving bond by the arbitrary action of the commissioners court; but no such case is presented by this record. It is not pretended that appellee made any tender of bonds or in any way whatever to qualify within the twenty days after receiving notice of his election. If, as claimed by him, attendance as a State witness on courts in other counties kept him away from home about fifteen of the twenty days allowed by law and thus prevented him from making his bonds, he nevertheless failed to do so, though the cause of failure may not have been due to negligence. It certainly can not be said that he did not "fail from any cause whatever" to qualify.

However, the Commissioners Court, instead of declaring the office vacant and appointing a sheriff to fill the vacancy at the expiration of said twenty days, as provided in said article 4894, extended the time twenty days longer, thus exercising a power not expressly granted but possibly implied in the grant of the greater power to declare and fill a vacancy, or it may be that this should be regarded as itself an appointment, which would have the effect of extending the time twenty days longer. But, as before seen, appellee not only failed to give or tender any bond and take the oath of office within the extended time or at any time thereafter, but also failed even to inform the county judge at the expiration of said twenty days, December 20, 1902, when he was directed to open and adjourn the court, that he desired to qualify. In order to excuse this failure and to invalidate the proceedings of the Commissioners Court he undertook in his answer to assail the motives of the county judge and two of the commissioners, charging against them a conspiracy to deprive him of the office, and now complains by cross-assignment of the court's action in striking out this defense. But there was nothing in this ruling to his detriment, since the facts clearly warranted the orders complained of. Where an officer has done a lawful act it is wholly immaterial that he may have been actuated by a bad motive.

For the same reason we need not consider the question, to which so much space is given in the briefs, whether the answer demurred out was

a direct or collateral attack on the orders of the Commissioners Court. Appellee's own testimony justified these orders, and this removal proceeding might have been maintained without them. The real question at issue was not so much what the Commissioners Court had done or might do, as what appellee had failed to do, which was abundantly shown by his own testimony. Had this been a quo warranto proceeding, like that of Flatan v. State, supra, in which the right to recover depended alone on the validity of the orders of the commissioners court declaring a vacancy in office, the question discussed in the briefs might have been important.

As to appellee's claim that he was entitled to hold over, notwithstanding his failure to qualify, because he had already taken the oath of office and given bond as appointee of the Commissioners Court, we need only cite the opinion of Justice Head in Robinson v. State, 28 S. W. Rep., 566, holding to the contrary. Besides, he was required by the Commissioners Court to give new bonds, which he made no pretense of doing. True, it does not appear that he was cited as provided by law where a sheriff is required to give a new bond, but no such provision is made with reference to the bond he was required to give as tax collector. Poe v. State, 72 Texas, 625.

It follows from these conclusions that the judgment must be reversed because the court erred, as appears from the charge given, the approval of the verdict and the refusal to give appellant's fourth special instruction, in holding that appellee could only be removed from office on a verdict finding him guilty of *negligence* in failing to qualify within the time mentioned in the charge, and in not holding him to be removable if he had *failed from any cause whatever* to qualify before the office was declared to be vacant by the Commissioners Court.

It only remains to determine whether we should render judgment or remand the case for a new trial, it being earnestly insisted in behalf of appellant that, as the evidence was conclusive against appellee's right to further hold the office, we should here enter judgment removing him. But we doubt our power to do this. Power was conferred by section 24, article 6, of the Constitution on "the judges of the district court" to remove county officers on specified grounds, and for "other causes defined by law upon the cause therefor being set forth in writing, and the finding of its truth by a jury." The failure of a county officer to qualify within a given time after notice of his election has been defined by law as a cause for removal. In Flatan v. State, supra, it was held by a majority of the court that one elected to an office was not a county officer within the meaning of said section of the Constitution until he had been inducted into office. The contrary view, however, was very strongly stated in the dissenting opinion of Justice Bonner. Accepting the view of the majority as the law, we are still confronted with the requirement of the Revised Statutes providing for the removal of county officers for various causes, including the failure to qualify, that the truth of the cause for removal shall be established by a verdict of a jury, which does not differ

in substance from the requirement of the Constitution. Rev. Stats., arts. 3541, 3544. The proceeding to remove a county officer is special, and the same procedure is prescribed in all such cases without reference to the cause for removal. True, in article 3532 the verdict of a jury is specifically required in every case of removal provided for in the preceding article which does not include removals for failure to qualify, which might therefore be construed to exclude such cases, but this is merely a reproduction of the language of the Constitution as interpreted by the majority opinion in Flatan v. State, supra. The subsequent article 3541 places removals for failure to qualify in the same category. Besides, there seems room for the contention that, as appellee had been inducted into the office of sheriff under his appointment and was holding over, the case would come within the meaning of the Constitution, which has been construed to authorize a district judge to remove a county officer only on the verdict of a jury finding the truth of the ground alleged as cause for removal. Poe v. State, 72 Texas, 625.

We have finally concluded, therefore, that we should resolve the doubt as to our power against its exercise and remand the case for a new trial, although there seems much force in the contention that we should here render a judgment of removal on the facts established by the evidence.

*Reversed and remanded.*