## AMERICAN NAT. INS. CO. v. COLLINS.

(Court of Civil Appeals of Texas. Austin. June 12, 1912.)

1. STATUTES (§ 147*) — PROVISION — LEGISLATIVE POWER.

Const. 1876, art. 3, § 43, which provided for a revision of the statutes at the first session of the Legislature under the Constitution, did not prevent the Legislature in revising the statutes in 1879 and inserting in the revision Act May 2, 1874 (Acts 14th Leg. c. 145) § 9, which made foreign life insurance companies liable to a penalty and an attorney's fee on refusal to pay over proceeds within the time provided by the policy from making the provision applicable to all life insurance companies as is done in Rev. St. 1895, art. 3071.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 216; Dec. Dig. § 147.*]

2. INSURANCE (§ 634*) — LIFE INSURANCE — COLLECTION OF PREMIUMS—AUTHORITY OF AGENT.

Where, in a suit on a life policy, insurer claimed that the policy had lapsed for nonpayment of the second semiannual premium, plaintiff properly pleaded that insurer's agent, to whom the premium was paid and who did not pay it over, was authorized to collect premiums generally, though his written contract of employment limited his authority to the collection of first premiums.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1596, 1598, 1603–1606, 1608; Dec. Dig. § 634.*]

3. DEPOSITIONS (§ 88*)—CROSS-INTERROGATORIES—OBJECTIONS—SUFFICIENCY.

On an issue whether a life insurer's agent was authorized to receive a second premium or merely, as claimed by insurer, to receive first premiums, testimony of insurer's bookkeeper on cross-interrogatories that the agent had made collections on several policies and reported them was properly admitted against objection that the testimony did not show that the premiums collected by the agent were not first premiums.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 234–236½, 242–245; Dec. Dig. § 88.*]

4. APPEAL AND ERROR (§ 1062*)—HARMLESS ERROR—SUBMISSION OF ISSUES.

In an action on a life policy, any error in submitting an issue as to authority of an agent to collect premiums other than the first was harmless where the premiums involved were the first year's premiums.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

5. INSURANCE (§ 602*) — LIFE INSURANCE — DELAY IN PAYING PROCEEDS — PENALTY — DEMAND—NECESSITY.

The penalty prescribed by Rev. St. 1895, art. 3071, against life insurance companies for failure to pay the proceeds of a policy within the time specified by the policy after demand therefor, is not recoverable in the absence of demand before suit, though it appears that demand would be ineffectual.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1498; Dec. Dig. § 602.*]

Appeal from District Court, Williamson County; C. A. Wilcox, Judge.

Action by Gertrude H. Collins against the American National Insurance Company. Judgment for plaintiff, and defendant appeals. Partly affirmed, and partly reversed and rendered.

Kleberg & Neethe, of Galveston, and Wilcox & Graves, of Georgetown, for appellant. W. A. Barlow, of Taylor, for appellee.

### Findings of Fact.

JENKINS, J. This suit was filed by appellee against the appellant, a life insurance company, incorporated under the laws of Texas, with its home office at Galveston, to recover of appellant $1,000, the amount of a policy issued by said company upon the life of her husband, Thomas Alexander Collins.

Appellant defended upon the ground that said policy had become forfeited at the death of the insured by reason of the failure to pay the premium thereon. The annual premium on said policy was $54.70, payable semiannually, the amount of said payments being $27.35. The insured paid the first semiannual premium to W. F. Thomas, the agent of appellant who secured said insurance, by delivering to said Thomas a note, which was accepted by the company. The second semiannual premium fell due on November 19, 1908. On about the 14th of November, 1908, the insured, Collins, met the agent, Thomas, in the office of Dr. J. R. Moore, in Taylor, and offered to pay the second semiannual premium. Thomas replied that it was not quite due, and that he did not have any official receipt. Dr. Moore stated that he could furnish paper for the receipt, and thereupon the insured paid Thomas the amount of said premium, and took a receipt from Thomas for the same, written upon ordinary note paper. This money was not paid by Thomas to the company, but under his contract with the company he was entitled to retain the same as his commission on said policy. On April 26, 1909, the following letter was written to the insurance company: "Amer. Nat. Ins. Co. Galveston, Texas.—Dear Sirs: This is to notify you that Thomas A. Collins was killed in Eagle Pass, Texas, on 19 at about 2 p. m. and died one hour later. He holds paid up policy No. 6116 in your company since last May 19, 1908. Please send blanks necessary for settlement at as early date as possible. Yours respectfully, Mrs. T. A. Collins (wife), per Dr. J. R. Moore." The insurance company replied to this letter as follows: "4-28-09. My Dear Sir: In reply to your favor of the 26th relative to Thos. A. Collins (colored) on whose life policy 6116 was issued on May 19th, 1908, beg to say records in this office show Collins paid the first semiannual premium only. The second semiannual premium was due Nov. 19th, 1908—he had thirty days' grace which kept his policy in force until Dec. 19th, 1908. Not hearing from him after Dec. 19th, 1908, his policy lapsed for nonpayment of premium. Cordially yours, Manager, K. F. Dr. J. R. Moore, Taylor, Texas." The following letter was also sent to the company: "Taylor, Texas, April 26th, 1909. American National Ins. Co., Galveston, Texas—Gentlemen: Beg to inform you that T. A. Collins, col., holding one of your policies, was killed last week. Yours very truly, [Signed] T. A. Falkenberg." To which said company replied as follows: "4-28-09. My Dear Sir: In reply to your favor of the 26th, relative to T. A. Collins (col.), on whose life policy 6116 was issued on May 19th, 1908, beg to advise that said policy was lapsed on Dec. 19th, 1908, for nonpayment of premium. Cordially yours, Manager, K. F. Mr. T. W. Falkenberg, Tay-

lor, Texas." The following letter was also sent to the company: "Taylor, Texas, 4-29-1909. Hon. G. E. Scott, Galveston, Texas—My Dear Sir: Yours dated 4-28-09 to hand and note what you say about Thomas A. Collins' policy No. 6116, but fortunately one W. F. Thomas, of Waco, Texas, and one of your agents and too one who solicited Mr. Collins' policy when issued is here and acknowledges in the presence of witnesses that Mr. Collins paid this second semiannual premium to him i. e. W. F. Thomas and that he has so reported to one Mr. McLemore of Dallas, Texas, furthermore I was an eye witness to Mr. Collins paying the same to W. F. Thomas in my office all of which Thomas acknowledges today. Now it seems to me that it is up to the company for settlement, believing the company is responsible for the acts of its agents, we hope for an early adjustment of this claim. Please give this your immediate attention and let me know if you still hold 'his policy lapsed' for nonpayment of premium. Very cordially, [Signed] J. R. Moore, M. D. Approved by [Signed] Mrs. Gertrude Collins, wife of late Thomas A. Collins, deceased." To which said company replied as follows: "5-1-09. My Dear Sir: In reply to your favor of the 29th relative to policy No. 6116, Thomas A. Collins, deceased, beg to advise there is no record in the office showing that the semiannual premium on above policy was ever received at the home office. No insurance company is responsible for the action of the agent in accepting premiums, except in the first payment made when application is taken. Courts have held that when the second payment on life policies is written the home office receipt must be delivered to the policy holder when he makes the second payment. If you can find among Mr. Collins' papers an official receipt for the second semiannual premium then the company is responsible whether they have received the money through their agent or general agent. We have no desire whatever to not pay claim under policy No. 6116 if the company is responsible for same. We have no doubt as to you having seen Mr. Thomas receive the second semiannual premium. However that second semiannual premium has never been received for same. We may have, for no office exists that does not make errors sometimes. Yet there is no record to show that was received or receipt issued. I am taking the matter up with Mr. McLemore by today's mail and will let you hear from me as soon as we hear from him. Cordially yours, Manager GES—KF. Dr. J. R. Moore, Taylor, Texas." These were the only communications sent to or by the appellee or said company. The policy not having been paid, appellee instituted suit thereon to recover amount of same, and also for 12 per cent. penalty for failure to pay same and reasonable attorney's fee, which were alleged to be $200. A verdict was rendered

in favor of appellee and judgment entered thereon for the amount of said policy and 12 per cent. penalty and $175 attorney's fees, making a total of $1,295.

The McLemore above referred to was the general agent of said company, and was authorized to and did employ the said Thomas as an agent for same.

### Opinion.

[1] Appellant's first assignment of error is as follows: "The court erred in overruling defendant's special exception to plaintiff's original petition, said special exception being as follows: 'Defendant specially excepts to all that part of plaintiff's petition wherein she asks for penalties and attorney's fees, because it appears that defendant is a life insurance company, incorporated under the laws of the state of Texas, and is not a foreign insurance company, wherefore defendant is not liable for such penalties and attorney's fees, and of this it prays judgment of the court'—which error is complained of in paragraph 2 of defendant's motion for a new trial." The contention of appellant under this assignment will appear from the following excerpt from its brief. "Article 3071 reads as follows: 'In all cases where a loss occurs and the life or health insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent. damages on the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of such loss.' It is a part of section 9 of the act of May 2, 1874 [Laws 1874, c. 145], but in the revision and codification of the statutes in 1879 a part of section 9 was left out. That part of section 9 from which article 3071 was taken reads as follows: 'The several foreign life insurance companies, and those incorporated out of this state, in all cases where a loss occurs, and when they refuse to pay the same within the time specified in the policy, shall be liable to pay the holder of such policy, in addition to the loss, not more than twelve per cent. on the liability of said company for said loss; also all reasonable attorney's fees for the prosecution of the case against said company.' Laws of Texas, vol. 8, p. 200, § 9. As originally passed, this revision applied only to foreign life insurance companies and to those incorporated out of this state, and did not apply to home companies. Section 43, art. 3, of the Constitution of 1876, which authorized the Legislature to revise the laws, reads as follows: 'Revision and publication of laws: The first session of the Legislature under this Constitution shall provide for revising, digesting and publishing the laws, civil and criminal; and a like revision, digest and publication may be made every ten years thereafter; provided that in the adop-

tion and giving effect to any such digest or revision, the Legislature shall not be limited by sections 35 and 36 of this article.' We do not think that under this provision of the Constitution the Legislature had any power or authority to change the meaning of section 9, of the act of 1874 above referred to." Why not? The authority conferred upon the Legislature by said section 43, art. 3, is to revise the laws of this state. The principal purpose of such revision was to bring together in one act, under proper titles and consecutive numbers, the laws in force at the time of such revision; but we do not think that the Legislature was limited to copying verbatim the language used in the acts then in force. Mr. Sutherland in his work on Statutory Construction says: "Revision of statutes implies a re-examination of them. The word is applied to a restatement of the law in a connected or improved form. The restatement may be with or without material change. A revision is intended to take the place of the law as previously formulated. * * * Revising statute embracing antecedent general laws on various subjects, and reducing them to one system and one text, repeals all prior statutes upon the same subjects not included in the body of the revision, and not exempted by an express clause. * * * The revision is a re-enactment, and to be alone consulted to ascertain the law when its meaning is plain." Suth. on St. Const. §§ 154, 155, and 156; City of Helena v. Rogan, 27 Mont. 103, 69 Pac. 710.

Appellant insists, and with much plausibility, that the words "out of," as contained in section 9 of the act of May 2, 1874 (Acts of the 14th Leg. p. 200), is a clerical error, and should read "within." All insurance companies incorporated out of this state are foreign insurance companies, and therefore the words "out of" were unnecessary, if only foreign insurance companies were intended to be embraced in this section of the act. The caption of said act is, "An act to regulate life and health insurance companies, and all associations, partnerships or individuals doing life and health insurance business, incorporated within or without the state of Texas." Our view of the power of the Legislature to amend existing laws by enacting the Revised Statutes, as above expressed, and upon which we prefer to rest our opinion on this point, renders it unnecessary for us to decide as to whether or not the words "out of," as found in the printed act, were inserted by clerical error.

For the reasons stated, appellant's first assignment of error, as also its second, third, and fourth assignments, raising the same issue, are overruled.

[2] 2. The court did not err in overruling appellant's exception to that portion of appellee's petition wherein it was alleged that appellant authorized its agent, W. F. Thomas, to collect and receive from the public generally premiums due on policies on the-

lives of other parties. The allegations in appellee's petition were not sufficient as a plea of estoppel, inasmuch as it was not alleged that appellee had knowledge of such acts and acted upon them. But appellee contended that said agent was in fact authorized by appellant to collect premiums for it, other than first premiums, notwithstanding his written contract of employment limited his authority in this regard to the collection of the first premium, and the allegations of appellee's petition were sufficient to raise this issue. It is immaterial that a principal says that his agent shall not have authority to do a certain thing, if in fact he authorizes him to do such thing, and his dealings with the agent, and with others through such agent, may be looked to in determining whether or not the principal has in fact clothed the agent with such authority. Ins. Co. v. Ellis, 137 S. W. 184.

[3] 3. There was no error in overruling appellant's objections to answers of the witness Wiley to the cross-interrogatories propounded to him by appellee, with reference to the collection of premiums by the agent Thomas. To said cross-interrogatories the witness Wiley answered: "Yes; he had made collections on a number of policies and reported thereon. Yes; he had made some collections and remitted to this office. No; never heard any one notify Thomas not to make collections and remit to the office. Have no recollection of notifying any person not to pay Thomas." The objection to this evidence was that this testimony did not show that the premiums collected by Thomas were not the first year's premiums. The witness was appellant's bookkeeper, and for the reason that there was no issue as to Thomas' authority to collect first premiums the witness doubtless understood the inquiry to relate to premiums other than the first. Had there been any doubt as to this, appellant could have further examined the witness on this point. Under the circumstances, the objection was entirely too technical to require the exclusion of said testimony.

[4] 4. Appellant complains of the court's submitting to the jury the issue as to whether or not the course of dealing between the company and Thomas showed that Thomas had authority to collect premiums other than the first; and also of the verdict as not being sustained by the evidence on this issue. Both the pleadings and the evidence raised this issue, and the testimony was sufficient to sustain the finding of the jury in favor of such authority. In any event, error, if such there had been in submitting this issue, was harmless in so far as appellant was concerned, for the reason that the contract between the company and Thomas authorized Thomas to collect the first year's premium, whether paid at one time or in installments. The premium collected by Thomas in this case was part of the first year's premium.

[5] 5. We sustain appellant's assignment of error as to so much of the judgment as allowed appellee to recover 12 per cent. penalty and attorney's fee, for the reason that the evidence as heretofore set out in the findings of fact fails to show any demand upon appellant to pay said policy prior to the filing of the suit herein. The decisions in this state have settled the proposition that, in order to recover the penalty and attorney's fee for failure to pay a life insurance policy, demand must be made prior to the filing of suit, although it may appear that such demand would have been ineffectual, and that payment would have been refused. Insurance Co. v. Ford, 130 S. W. 769; Insurance Co. v. Ford, 131 S. W. 406; Insurance Co. v. Sturdevant, 59 S. W. 61. The reason for this is that the right to recover the penalty and attorney's fee does not rest upon contract, nor the right to recover damages for tort, but is strictly statutory; and therefore, in order to recover, the terms of the statute must be strictly complied with. Schloss v. Railway Co., 85 Tex. 601, 22 S. W. 1014.

The judgment of the lower court in favor of appellee for $1,000, the amount of the insurance policy, is affirmed; but the judgment for the recovery of 12 per cent. penalty and attorney's fee is here reversed and on that issue rendered in favor of appellant.

Affirmed in part and in part reversed and rendered.